## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

———————————————————

**Steven W. Forslund,**                                   **Civil No.: 05-2144 (DSD/JJG)**


                              Plaintiff,

v.                                                        **REPORT AND**
                                                          **RECOMMENDATION**

**Jo Anne B. Barnhart**,
Commissioner of
Social Security,
                              Defendant.

———————————————————

JEANNE J. GRAHAM, United States Magistrate Judge.

Plaintiff Steven Forslund seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), who denied his application for supplemental security income under the Social Security Act, 42 U.S.C. §§ 401 *et seq* and 20 C.F.R. §§ 404.1520 and 416.920(g).  The matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.  The parties have submitted cross motions for summary judgment.  For the reasons set forth below, this Court recommends that the Commissioner's decision be affirmed and the case be dismissed with prejudice.

### I.     INTRODUCTION

Steven Forslund was born on January 26, 1961. (R. at 118).  Mr. Forslund filed an application for supplemental security income benefits on April 16, 2002  (R. at 103).[1]  Mr. Forslund alleged he was totally disabled and unable to work due to his eyes bothering him from welding, learning disabilities, dyslexia, back

———————————————————

[1]Plaintiff contends he protectively filed his application on February 8, 2002. (R. at 160).

and neck pain injuries and pain, headaches, allergies and depression.  (R. at 134).  Plaintiff had previously

filed for supplemental security income benefits in 1996 and 2000.  These applications were both denied.

(R. at 121-122).  Following the denial of his 2000 application on October 23, 2001, Plaintiff amended the

onset date of his disability to October 24, 2001.  (R. at 46).  The Social Security Administration denied

the application initially and on reconsideration. (R. at 90 & 95).   Administrative Law Judge, Michael

Quayle, held a Social Security hearing in Minneapolis, Minnesota, at which Mr. Forslund, accompanied

by his mother,  appeared with counsel and testified. (R. at 42-68).  A neutral vocational expert also testified

at the hearing.  (R. at 52-62).

The ALJ issued an unfavorable decision on November 24, 2004.  (R. at 25-37).  In his decision,

the ALJ employed the five-step sequential analysis required under 20 C.F.R. §§ 404.1574 and 416.920.

During the five-step analytical process, the ALJ considers whether (1) the claimant is gainfully employed,

(2) the claimant has a severe impairment, (3) the claimant's impairment meets or equals the level of severity

described in the Listing of Impairments, (4) the impairment prevents the claimant from performing past

relevant work, and (5) the impairment necessarily prevents the claimant from doing any other work.

*Ramirez v. Barnhart*, 292 F.3d 576, 580 (8th Cir. 2002).  If the claimant fails at any step, the ALJ need

not continue. The claimant carries the burden of establishing that he is unable to perform his past relevant

work, i.e., through step four, at which time the burden shifts to the Commissioner to establish that he

maintains the residual functional capacity to perform a significant number of jobs within the national

economy. *See Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir.2000).

In step one of the analysis, the ALJ found no evidence that Mr. Forslund has engaged in substantial

gainful activity since he filed his application. (R. at 26).  Next, the ALJ found Mr. Forslund to be severely

impaired by degenerative thoracic disease, headaches, dyslexia, and depression. (R. at 28). The ALJ

considered Plaintiff's other physical diagnoses, but did not find them to be severe. (R. at 28). The ALJ

considered Plaintiff's psychiatric diagnoses, but found no evidence of marked functional impairment. (R.

at 29-30). In step three, the ALJ then determined that Mr. Forslund does not have an impairment or

combination of impairments that meets or equals the relevant criteria of any listed impairment in the Listing

of Impairments. (Id.).

In step four of the sequential analysis, the ALJ concluded Mr. Forslund has a residual functional

capacity ("RFC")

> to lift and carry 20 pounds occasionally and ten pounds frequently. He can sit, stand or walk for
> six to eight hours. He can occasionally climb ramps and scaffolding. He can occasionally stoop
> and crouch, but can frequently balance, kneel and crawl. He is also restricted in his capacity to
> concentrate on, understand and remember routine, repetitive tasks in three or four step tasks but
> moderately impaired for detailed and markedly impaired for complex tasks. Claimant retains the
> ability to interact with coworkers, supervisors and the public on a brief and superficial basis.
> Claimant requires low stress work.

(R. at 37). The ALJ concluded that Plaintiff had met his burden of proof to demonstrate inability to

perform past relevant work as a carpet layer and combination welder. (R. at 36). The ALJ then

acknowledge the shifting of the burden of proof to the Commissioner to show that other work exists in

significant numbers in the national economy, and took the testimony of a neutral vocational expert. (Id.).

Finding the vocational expert's testimony credible, persuasive and uncontradicted, the ALJ concluded Mr.

Forslund can perform a significant number of jobs in the regional and national economy. (Id.). The ALJ,

therefore, determined that Mr. Forslund was not under a disability as defined in the Social Security Act,

and is not eligible for supplemental security income benefits. (Id.).

Plaintiff submitted a request for review of the ALJ's decision to the Appeals Council.  (R. at 19-20).  According to the documents in the Record, the Appeals Counsel denied his request for review on July, 15, 2005, but subsequently set that denial aside after Plaintiff submitted post-hearing evidence.  (R. at 10-11).[2]  The Appeals Council again denied the request for review on September 9, 2005.  (R. at 10).  The decision of the ALJ therefore became the final decision of the Commissioner.  (Id.).

## II.    DISCUSSION

Mr. Forslund raises numerous objections to the ALJ's decision, including that the ALJ (1) wrongly discounted treating medical opinion, (2) improperly discredited his subjective complaints, (3) denied benefits on the basis of a lack of evidence that the new evidence submitted post-hearing now provides, (4) failed to properly account for the practical ramifications of Plaintiff's dyslexia in the hypothetical presented to the VE, and (5) failed to acknowledge substantial evidence that multiple migraines each week make regular employment impossible.  Plaintiff also objects to the removal of evidence of prior claims from the administrative record submitted to this Court for the purposes of the instant review.  Respondent contends the ALJ made no reversible errors in reaching his determination that the Plaintiff is not disabled under the Social Security Act.

### A.    Standard of Review

When reviewing the Commissioner's decision, the Court neither reweighs the evidence, nor reviews the factual record de novo.  *Flynn v. Chater*, 107 F.3d 617, 620 (8th Cir. 1997).  The scope of review

_____

[2]There is no document from the Appeals Counsel in the Record directly evidencing a denial of Plaintiff's initial request for review.  However, in its correspondence informing Mr. Forslund of its second denial of review following Plaintiff's submission of additional information, the Appeals Counsel specifically references its July 15, 2005, denial of Plaintiff's initial request for review.  (R. at 8 & 10).

is narrow; the Court must affirm the Commissioner's decision so long as it conforms to the law and is supported by substantial evidence on the record as a whole. *Collins v. Barnhart*, 335 F.3d 726, 729 (8th Cir. 2003). In determining whether evidence is substantial, the Court must consider "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). Substantial evidence is less than a preponderance, but enough that a reasonable mind might find adequate to support the ALJ's conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record supporting the Commissioner's conclusion, the Court cannot reverse merely because it would have decided the case differently. *Roberts v. Apfel*, 222 F.3d 466, 468 (8th Cir. 2000).

### B.      The ALJ's Consideration of the Plaintiff's Treating Physician's Opinion

Three of Mr. Forslund's objections concern the ALJ's consideration of opinions expressed by his treating physicians, Dr. Holth and Dr. Schwender. Specifically, Plaintiff challenges the ALJ's consideration of Dr. Holth's opinions regarding the frequency and severity of Plaintiff's migraine headaches, and the impact of these headaches on Plaintiff's ability to work. Plaintiff also argues that new medical evidence provided post-hearing overcomes the ALJ's reasons for discounting the medical evidence provided by Dr. Schwender. Respondent contends the ALJ properly considered the opinions of Plaintiff's treating physicians, and that his decision to give them little weight is substantially supported by the evidence in the record as a whole.

### 1.      Legal Standard for Deference to Treating Physicians

A treating physician's opinion is typically entitled to substantial weight. *Dixon v. Barnhart*, 353 F.3d 602, 606 (8th Cir. 2003); *see also* 20 C.F.R. § 416.927(d)(2). A treating physician's opinion is

given "controlling weight" if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence. *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citations omitted). On the other hand, the opinion of a treating physician is not entitled to substantial weight if it is inconsistent with other substantial evidence in the record. *See Kelley v. Callahan*, 133 F.3d 538, 589 (8th Cir. 1998).

### 2. ALJ's Considerations of Dr. Holth's Opinions

Plaintiff contends the ALJ erred in his consideration of Dr. Holth's opinions relating to Plaintiff's migraine headaches. Plaintiff contends the medical evidence from Dr. Holth demonstrates Plaintiff's migraines were triggered by muscle spasms originating in his back, were incapacitating, occurred at a frequency of twice a week, and were resistant to all forms of treatment; at times requiring injections of analgesics. Plaintiff argues the ALJ wrongly discounted Dr. Holth's opinion that Plaintiff's intermittent migraines made regular work attendance impossible. The Court disagrees and finds substantial evidence in the record contradicts Dr. Holth's opinions and conclusions regarding Plaintiff's migraine headaches.

First, the Court notes that the ALJ credited Dr. Holth's opinions regarding Plaintiff's migraine headaches in concluding Plaintiff was severely impaired by headaches. (R. at 27-28). The ALJ's decision to give little weight to Dr. Holth's opinions concerning Plaintiff's migraines focused on the physician's opinions regarding the frequency and severity of the migraines, the ability to medically treat Plaintiff's migraines, and the impact of Plaintiff's migraines on his ability to work. (R. at 32-33). The medical evidence in the record indicates Plaintiff sought emergency room treatment for an acute migraine headache on one occasion (R. at 285-287). On April 29, 2004, Plaintiff went to the emergency room complaining of acute headache pain and was given an injection of Toradol and Compazine. (*Id.*). According to the

6

emergency room treatment records, Plaintiff reported experiencing similar symptoms "monthly" for the past eight to nine years. (R. at 286).  The treatment records also indicate the Toradol injection successfully relived Plaintiff's pain. (R. at 287; *see also* 275).  This Court has reviewed the medical records presented to the ALJ, as well as the supplemental medical records provided by Plaintiff to the Appeals Counsel, and finds a lack of additional medical evidence indicating visits to the emergency room by Plaintiff for treatment of severe migraine headaches.[3]  This medical evidence does not support Dr. Holth's opinion that Plaintiff's migraine headaches were debilitating or that they occurred with great frequency.

Moreover, Dr. Holth's own treatment notes are inconsistent with his proffered medical opinion that Plaintiff's migraine headaches were resistant to all forms of treatment.  A review of the medical records during the relevant time, including the supplemental records provided by Plaintiff, indicates the Plaintiff repeatedly informed his treating physician that medications effectively helped his headache pain.  In December 2001, Plaintiff reported to Dr. Holth that Toradol tablets and Tylenol-3 helped with his headaches (R. at 265).  In 2002, Dr. Holth reported Toradol was "quite effective though they do not totally relieve [Plaintiff's] pain." (R. at 258).  In 2003, Dr. Holth reported Tylenol or Ibuprofen "decreased the frequency of his intractable migraine headaches, although he still needs occasional injection of analgesic to resolve a severe headache." (R. at 268).  Finally, Dr. Holth noted in 2004, that Plaintiff reported the injection of Toradol he received at the emergency room "took away the headache." (R. at 275).  In

---

[3]While the record contains evidence of Plaintiff receiving emergency room treatment on other occasions, none of these treatment records indicate treatment of acute headache pain as the reason for Plaintiff's visit to the emergency room.

addition, according to the supplemental medical records, in May 2005, Plaintiff reported to his new treating physician, Dr. Hoj, that Ibuprofen was helping his headaches.  (R. at 340).

In sum, the Court agrees with the determination of the ALJ that little weight should be given to the opinions of Dr. Holth that Plaintiff's headaches are frequent, incapacitating and intractable, and that they therefore prevent Plaintiff from regularly attending work.  The Court finds these opinion of Dr. Holth are internally inconsistent with his own medical records, and are therefore entitled to less deference.  *See Johnson v. Chater*, 87 F. 37 1015, 1018 (8th Cir. 1996) (treating physician's opinion that is itself inconsistent is entitled to less deference).  In addition, these opinions are inconsistent with other substantial weight in the record, and are thus, not entitled to substantial weight.  *See Kelley*, 133 F.3d at 589.  The ALJ did not err by discounting Dr. Holth's opinion that the severity and frequency of Plaintiff's headaches prevent him from engaging in any employment.

### 3.      ALJ's Considerations of Dr. Schwender's Opinion - New Evidence

Plaintiff also challenges the ALJ's refusal to give the opinion of Dr. Schwender substantial weight. In July 2004, Dr. Schwender completed a medical assessment form opining Plaintiff could occasionally and frequently lift ten pounds and could, in an eight hour work day, stand, walk and sit for no more than two hours total.  (R. at 309-10).  In considering Dr. Schwender's opinion, the ALJ noted the lack of accompanying clinical records to support the physician's restrictive assessment. (R. at 35).  Eight months after the hearing, Plaintiff submitted clinical records from Dr. Schwender to the Appeals Counsel, and now argues this new evidence overcomes the basis for the ALJ's objections to the physician's opinions.

Under Eighth Circuit law, when new and material evidence is submitted to the Appeals Council, and the Appeals Counsel considers the new evidence but declines to review the case, the reviewing court

reviews the ALJ's decision and determines whether there is substantial evidence in the administrative record, which now includes the new evidence, to support the ALJ's decision. *Browning v. Sullivan,* 958 F.2d 817, 823 n. 4 (8th Cir.1992). The Court has reviewed the pre-hearing opinions of Dr. Schwender and the clinical records of Dr. Schwender submitted to the Appeals Counsel by Plaintiff and finds no merit to Plaintiff contentions.

First, Dr. Schwender's pre-hearing medical opinion regarding Plaintiff's disability and limitations were submitted without clinical or laboratory diagnostic evidence. A treating physician's opinion is entitled to controlling weight only when it is "well-reasoned supported by medically acceptable clinical and laboratory diagnostic techniques and is not consistent with the other substantial evidence in your record." 20 C.F.R. § 404.1527(d)(2). Dr. Schwender's pre-hearing opinion was merely conclusory. Consequently, the ALJ did not err in declining to give this opinion controlling weight. *See Wilson v. Chater*, 76 F.3d 238, 241 (8thCir. 1996) (treating physician's conclusory opinion unsupported by clinical or diagnostic evidence not entitled to controlling weight).

Second, Dr. Schwender's own clinical records submitted by Plaintiff to the Appeals Counsel do not support Dr. Schwender's extremely limited assessment of Plaintiff's functional limitations. In April 2002, Dr. Schwender noted Plaintiff "still walks with a kyphotic deformity of the thoracic spine" but also indicated Plaintiff had normal reflexes and "no evidence of clonus."[4] (R. at 361). In November of the same year, Dr. Schwender again noted Plaintiff's thoracic kyphosis with restricted range of motion," but also

---

[4] Clonus is defined as "rapid succession of alternating contractions and partial relaxations of a muscle occurring in some nervous system diseases." MERRIAM-WEBSTER COLLEGIATE DICTIONARY 233 (11th ed. 2006).

noted Plaintiff's thoracic spine was "non-tender." (Id.). Again, Plaintiff was noted to have normal reflexes

and "no evidence of clonus." (Id.). Upon examination of Plaintiff in May 2004, Dr. Schwender determined

Plaintiff had normal reflexes in his lower extremities and normal motor functioning. (R. at 360). In June

2004, despite noting an increase in neck pain as a result of a motor-vehicle accident, Dr. Schwender found

Plaintiff to have "good strength in his upper extremities" and normal reflexes. (R. at 359). Finally, when

Dr. Schwender examined Plaintiff in April 2005, he found only "mild discomfort" upon "gentle palpation

of the trapezial musculature," normal reflexes" and "good strength." (R. at 358). Clinical findings such as

these are contradictory to Dr. Schwender's findings that Plaintiff was limited to a 10 pound lifting restriction

or a two hour sitting, standing and walking restriction. (R. at 309-310).

        Third, Dr. Scwender's opinion is inconsistent with other substantial evidence in the record. For

example, Dr Kim, at the Mayo Clinic, noted upon examination of Plaintiff in 2002, that Plaintiff had a

"normal heal, toe and tandum gait," "normal alignment of the spine," "full range of motion in every plane,"

and normal "extension, rotation and side bending." (R. at 209). Dr. Kim noted that "percussion of his

entire spine shows diffuse tenderness, but these is no one area of tenderness," but found also "no pain to

palpitation over the cervical or thoracic spine." (Id.). Upon examination of Plaintiff's upper and lower

extremities, Dr. Kim found "full painless range of motion" of the shoulders, elbows, wrists, hips, knees and

ankles. (Id.). Dr. Holth also found Plaintiff upper and lower extremities to be normal. (R. at 266). The

Court finds substantial evidence in the record contradicts the opinion of Dr. Schwender regarding the

Plaintiff's functional limitations, and the ALJ did not err in giving Dr. Schwender's opinion less than

controlling weight.

Finally, Plaintiff contends the clinical records of Dr. Schwender demonstrate the physician's commitment to finding Plaintiff disabled, and that this opinion of his treating physician is entitled to controlling weight.   A treating physician's statement that the a claimant is disabled cannot itself be determinative. *Nelson v. Sullivan*, 946 F.2d 1314, 1317 (8ᵗʰ Cir.1991).  The Court finds nothing in the substance of Dr. Schwender's clinical notes that might have changed the ALJ's decision to give Dr. Schwender's opinion little weight.  The addition to the record of Dr. Schwender's clinical notes does not result in a demonstration of a change or worsening in Plaintiff's condition.

In June 2002, a state agency physician reviewed the record.  (R. at 244-252).  Specifically noting the findings of the examining Mayo Clinic physicians, the state agency physician opined Plaintiff could perform light level work, which includes occasionally lifting and carrying up to 20 pounds, frequently lifting and carrying up to 10 pounds, and sit, stand and walk about six in every eight hour work day.  (R. at 251). In March 2003, a separate state agency physician reviewed the record and affirmed these findings of light work.  (R. at 251).   The Court finds that the state agency reviewing physicians findings are consistent with the credible substantial evidence in the medical record, and that they are based upon clinical records that were consistent with the new medical evidence submitted by Plaintiff subsequent to the ALJ's determination.  Consequently, the Court finds no error in the ALJ's reliance upon the opinions of the state agency reviewing physicians who found Plaintiff capable of light level work. (R. at 34, 245, 251).[5]

---

[5] Plaintiff asks this Court to "publish an opinion of first impression that expands the treating physician rule" by requiring an ALJ that dismisses a treating medical opinion to "fully and fairly develop a medical rationale that explicitly contrasts accepted diagnostic techniques, treatments, and medications for the impairment(s) with those offered by the treating physician."  The Court lack the authority to change or modify existing regulations, and declines Plaintiff's invitation to do so.

### C.      ALJ's Consideration of Plaintiff's Credibility

Plaintiff contends the ALJ improperly discounted Plaintiff's subjective complaints because substantial evidence does not support the ALJ's credibility determinations.  In determining a claimant's RFC at step four of the sequential analysis, an ALJ must evaluate the credibility of the testimony regarding claimant's subjective complaints of pain.  *Ramirez*, 292 F.3d at 580.  In *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), the Eight Circuit approved a standard for credibility evaluations of a claimant's pain and subjective complaints.  The absence of supporting medical evidence is one factor to consider in evaluating credibility.  Id. at 1322.  The ALJ must also consider the claimant's prior work record;  daily activities; duration, frequency and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions.  Id.  "Subjective complaints may be discounted if there are inconsistencies in the record as a whole." Id.  Questions of credibility are for the trier of fact, and a reviewing court should defer to the ALJ's credibility determination if the decision expressly discounts a claimant's evidence and gives good reason to do so.  *Dixon v. Sullivan*, 905 F.2d 237, 238 (8th Cir. 1990).  In the instant case, the decision of the ALJ provides a lengthy and detailed discussion of the ALJ consideration of Plaintiff's credibility under the *Polaski* factors. (R. at 30-36).

### 1.      Absence of Supporting Medical Evidence

The ALJ found the objective medical evidence did not fully support Mr. Forslund's subjective complaints.  Specifically, the ALJ examined the medical findings from Plaintiff's 2002 x-rays and MRIs at the Mayo Clinic, showing mild gradual kyphosis, and from Plaintiff's 2004 x-rays and CT-scans following the 2004 motor-vehicle accident, showing normal vertebral alignment and no wedge compression injury, with "mild kyphosis" and "an absence of herniation, nerve root impingement, central canal stenosis or

compromise," and found these findings inconsistent with the debilitating difficulties and pain alleged by

Plaintiff. (R. at 31). In a lengthy and detailed discussion, the ALJ examined the clinical findings of each

of Plaintiff's treating physicians included in the record and found numerous reports of mild upper thoracic

tenderness, mild spasms, normal neurological functioning, full range of motion, with the exception of pain

in bending and extension, and normal reflexes. (R. at 31-32). Through this examination, the ALJ

concluded the record lacked medical evidence supporting Plaintiff's allegations of the degree of his

impairments or the severity of his debilitating pain. (Id.). The ALJ properly considered the absence of

supporting medical evidence in evaluating Plaintiff's credibility.

### 2.      Past Relevant Work

The ALJ included in his *Polaski* analysis consideration of Plaintiff's employment history and

motivation for work. The ALJ noted Plaintiff's limited employment history, and indicated the affording of

all benefit of doubt with regard to the lack of wages since 1996 as a result of his injuries and his belief that

he was disabled and in pursuit of social security benefits. (R. at 35). The ALJ noted, however, evidence

of a lack of wages for multiple years and concluded the evidence suggested a "spotty employment history

and lack of motivation for full-time competitive employment.(Id.). The ALJ also noted his observations

that the facts that the Plaintiff's home was paid off, that his mother paid his property taxes, that his parents

paid his bill, and that Plaintiff received food stamps and medical benefits from the state also contributed to

his conclusion that the Plaintiff's motivation to work was limited in light of the fact that his needs appeared

to satisfied by his present income. (R. at 35). The ALJ properly considered the Plaintiff's past relevant

work in his consideration of the credibility of Plaintiff's subjective complaints.

13

### 3. Daily Activities

The ALJ considered Mr. Forslund's daily activities and found them to be inconsistent with the degree of difficult alleged. (R. at 34). The ALJ first noted Plaintiff has not tried to work for seven years due to the severity of his pain. (R. at 30). Contrasting Plaintiff's reports that he cannot work because of pain, the ALJ noted Plaintiff's 2002 report to a psychological examiner that he had replaced a vehicle transmission, and noted Plaintiff had gone to a garage sale where he purchased a lawn mower. (R. at 34). The ALJ noted the fact that Plaintiff drove himself to the Mayo Clinic and lives in a log cabin which he built, with the help of his friends, but has not worked on for five or six years. (Id.). The ALJ considered the fact that Plaintiff now reports he lives alone, but previously reported he was raising his then twelve year old twin sons. (Id.). The ALJ found Plaintiff's attendance at an outdoor holiday parade further suggested that Plaintiff's capabilities were greater than alleged. (R. at 34). The ALJ also considered the Plaintiff's own submissions in the record, which indicate he cooks simple meals, cleans, and does the laundry and grocery shopping. (R. at 29, 34 & 178). Evidence that daily activities are inconsistent with the alleged level of pain may be considered in judging the credibility of subjective complaints. *See Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1995). The Court finds the ALJ properly considered inconsistencies in the record relating to Plaintiff's activities of daily living as part of his assessment of Plaintiff's credibility of subjective complaints.

### 4. Duration, Frequency and Intensity of Pain

In considering Plaintiff's credibility, the ALJ examined Plaintiff's reports of the frequency and intensity of his pain. The Court has examined the inconsistencies in the record regarding the frequency and intensity of Plaintiff migraine headaches and neck and back pain above. To that previous discussion, the

14

Court notes here that ALJ also considered Plaintiff's allegations of his difficulties with anxiety and depression. (R. at 33). The ALJ gave some credit to Plaintiff's subjective complaints of back pain, and restricted Plaintiff's exertion and postural movements in the Plaintiff's RFC. (R. at 31). The ALJ also noted Plaintiff's complaints of pain, depression and dyslexia by restricting the complexity of work, the stress involved in work and interpersonal contacts. (Id.). However, the ALJ also noted his inability to fully credit Plaintiff's claims of an inability to engage in all work activity at any level because of significant inconsistencies in the record as a whole. (R. at 30-31).

The ALJ's considerations are well supported by the record. On numerous occasions, Dr. Holth noted upon examination, that Plaintiff was in no obvious distress and had mild to no tenderness of the thoracic spine. (R. 207, 256, 263, 275, 303). Dr. Schwender's clinical notes reflect similar observations. (R. 358 & 361). The Court recognizes that the record contains evidence of Mr. Forslund's medical treatment for back pain, neck pain and headaches. However, while there may be no doubt the Plaintiff is experiencing pain, the issue is the severity of the pain. *See Hutton v. Apfel*, 175 F.3d 651, 654 (8th Cir. 1999). There is substantial evidence, both cited by the ALJ and in the record itself, negating the alleged frequency and severity of Plaintiff's pain. Accordingly, Court finds the properly considered the frequency and intensity of Mr. Forslund's pain.

### 5.      Dosage, Effectiveness and Side Effects of Medication

The Court next turns to the dosage, effectiveness and side effects of Plaintiff's medication. Plaintiff reported, and the medical records confirm, Mr. Forslund has been prescribed numerous medications at varying time during the relevant time period. The ALJ considered the medications taken by Plaintiff and found the course of medical treatment and use of medication in this case to be inconsistent with

disabling levels of pain. (R. at 33-34).  The ALJ noted the Plaintiff's use of a variety of medications,

including non-steroidal anti-inflammatory drugs, analgesics, muscle relaxers and narcotics, but found Plaintiff

did not use these medications on a sustained basis that would be consistent with the level of pain and

impairment alleged.  (R. at 33).  The ALJ noted Plaintiff's frequent reporting of significant relief, and the

fact that by November 2003, Plaintiff was only using Amitriptyline and over the counter medications.  (Id.).

According to the supplemental records submitted to the Appeals Counsel, Plaintiff was only using Ibuprofen

for pain in May 2005.  (R. at 340).

        The medical records contain numerous indications that medications effectively managed Plaintiff's

pain.  In September 2001, Dr. Holth noted Plaintiff's "pain is controlled with Toradol 10 mg at bedtime

and a Tylenol No. 3 at bedtime."  (R. at 266).  In December 2001, Plaintiff reported "his pain is fairly well

controlled at the present time by using Toradol occasionally, usually a few 10 mg tablets a month but also

using Tylenol No. 3, 2 tablets in the morning and 2 in the evening."  (R. at 265).  In February 2002, Plaintiff

reported the use of Soma and Vicodin "worked fairly well."  (R. at 263).  In February 2004, Dr. Holth

noted "Patient has been using Tylenol for pain control.  This does not take away the pain complete [sic]

but does help some."  (R. at 282).  Finally, in May 2004, Dr. Holth noted "Patient is on Mirapex and

amitriptyline, which have been helping."  (R. at 298).   The Court finds the ALJ properly considered the

dosage and effectiveness of Plaintiff's medications in assessing the credibility of his subjective complaints.

### 6.    Other Factors

        The decision of the ALJ does not specifically address each and every factor identified in *Polaski*.

However, an ALJ need not discuss methodically each *Polaski* factor as long as the factors are

acknowledged and examined.  *See Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000).  The court will

16

defer to an ALJ's good judgement even if every *Polaski* factor is not discussed in depth as long as the ALJ gives good reasons for discrediting the claimant.   *See Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001).

Here the Court finds that although the ALJ's did not expressly discuss all of the *Polaski* factors in his decision, he thoroughly reported on his analysis of the Record and his reasons for partially discrediting Mr. Forslund's subjective complaints of pain.   The Court finds that the ALJ's decision chronicles Plaintiff's extensive medical history and treatments, and notes the Record's confirmation of a history of chronic back and neck pain, as well as headaches.   However, the ALJ's decision also identifies treatment records that repeatedly document mild to no abnormalities on the basis of medical diagnostics and testing, as well as reports of improvement in the level of pain following treatment with various medications.

In sum, the Court finds there is substantial evidence in the Record to support the ALJ's finding of inconsistencies in the supporting medical evidence and the severity of Mr. Forslund's allegations.   The Court also finds there is more than adequate detail in the decision of the ALJ regarding his reasons for the level of discrediting of Plaintiff's subjective complaints.

### D.    ALJ's Consideration of Plaintiff's Dyslexia

Plaintiff contends the ALJ erred in his consideration of his dyslexia.   Specifically, Plaintiff contends the ALJ's hypothetical questions were invalid because they failed to describe the practical ramifications of Plaintiff's dyslexia. Plaintiff argues the jobs the ALJ found Plaintiff capable of performing all require an educational level beyond the reading and writing capabilities possessed by Mr. Forslund, and that these jobs are therefore not commensurate with Plaintiff's RFC.

17

RFC is a medical question.  *See Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000).  RFC is what a claimant can do despite her limitations, and it must be determined on the basis of all relevant evidence including medical records, physician's opinions, and claimant's description of her limitations.  *See Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995); 20 C.F.R. §§ 404.1545(a) & 416.945(a).  It is the claimant's burden to prove his RFC.  Id.  However,  "[w]here the claimant has a nonexertional impairment (such as pain), the ALJ may not rely exclusively on the grids [medical-vocational guidlines] to determine disability but must also consider the testimony of a VE."  *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998); 20 C.F.R. Pt. 404, Subpt. P. App. 2, § 200.00(e).

There is limited evidence in the Record regarding Plaintiff's dyslexia and the limitations resulting therefrom.  The evidence that is included in the Record is further limited to Plaintiff's subjective complaints of dyslexia.  (R. at 133, 195, 218).  The ALJ recognized this shortfall in the evidence, but in giving the Plaintiff the benefit of all doubt, included limitations concerning the complexity of work in the hypothetical questions he posed to the vocational expert  to accommodate Plaintiff's dyslexia.  (R. at 31 & 33).

"A hypothetical question must precisely describe a claimant's impairments so that the vocational expert may accurately assess whether jobs exist for the claimant."  *Newton v. Chater*, 92 F.3d 688, 694-95 (8th Cir. 1996).  Where a hypothetical question posed to a vocational expert does not accurately reflect the claimant's impairments, the expert's testimony cannot constitute substantial evidence on the record as a whole.  *See Pratt v. Sullivan*, 956 F.2d 830, 836 (8th Cir.1992).  Testimony from a vocational expert based on a proper hypothetical constitutes substantial evidence.  *See Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996).

At the hearing the ALJ posed several hypothetical questions to the ALJ.  First, the ALJ asked the

vocational expert to consider the RFC reported by Dr. Holth in his May 21, 2004, medical assessment,

with the exception of the limitations for balance for which the ALJ found a lack of supporting analysis from

Dr. Holth. (R. at 35).  Specifically, the ALJ asked the vocation expert to consider:

> an individual of his age, educational background, and work history that fits this profile at C-13F
> [Dr. Holth's assessment]; 25 pounds occasionally; 5 pounds frequently; has multi-level
> degenerative disk disease of the thoracic spine; can stand and walk four hours in an eight-hour day;
> can stand and walk without interruption for a half hour; can sit for four hours, without interruption
> for half an hour; climb, balance, stoop, crouch, kneel, crawl all occasional; has some reaching
> problems, if he was involved in repetitive reaching, his pain would increase; he has some push and
> pull problems, increased pain and muscle spasm, but handling and fingering – handling, feeling,
> seeing, hearing, speaking are all checked no for "are the following physical functions affected by
> impairments?" The only environmental restriction as to temperature extremes, which may increase
> his headaches, and of vibrations, which may increase his back pain, has a history of migraines,
> thoracic disk disease, limited reading skills secondary to dyslexia. (R. at 54).

The vocational expert opined such an individual would be unable to perform Plaintiff's past jobs, but

identified numerous jobs available in the regional and national economy meeting that criteria.  (R. at 55).

The ALJ then asked the vocational expert if a person who is otherwise unimpaired had intermittent migraine

headaches, making regular attendance at work impossible, could be competitively employable at any of

the Plaintiff's past jobs or in the regional or national economy, to which the vocational expert answered

"Given that feature, no, I don't believe that person would be competitively employed."

Next the ALJ modified his hypothetical question to conform with the functional limitations reported

by the state agency medical consultant in 2003, stating:

> hypothetical number two, or I guess it would be two and a half with this other one that I asked you,
> would be 20 pounds  occasionally, 10 pounds frequently. The sit and stand are six hours. Push and
> pull is unlimited.  Ramps and stairs down to occasional. Stoop occasional.  Crouch occasional.
> Everything else is checked frequent.  I don't see any other physical limitations.  Psychological
> limitations would be ... moderate problems with detailed and marked problems with complex

instructions, so we'd be looking at routine, repetitive, three and four-step types of tasks. We'd be looking at brief and superficial contact with the public, coworkers, and supervisors. We'd be looking, basically at routine, competitive work with low stress. (R. at 56).

The ALJ asked the vocational expert whether an individual that would fit this profile would be able to perform past relevant jobs, to which the vocational expert responded in the negative. (Id.). The vocational expert then identified significant numbers of jobs in assembly, light machine operation and cashiering that would be suitable for a person of this profile. (R. at 57)

The Court disagrees with Plaintiff's contention that these hypothetical questions fail to account for Plaintiff's limitations due to his dyslexia. The first hypothetical includes a specific limitation of reading skills, secondary to dyslexia, and the second hypothetical limits the level of complexity of work by including considerations of "moderate problems with detailed and marked problems with complex instructions." (R. at 56). The hypothetical specifically indicates limitations to "routine, repetitive, three and four-step types of tasks." (Id.). While the record contains very little clinical evidence regarding the particular limitations Plaintiff experiences as a result of his dyslexia, Plaintiff did inform one of the psychological examiners that "he felt able to comprehend and concentrate on written instructions." (R. at 218). This admission by Plaintiff directly contradicts the opinion of treating physician, Dr. Holth, that Plaintiff's dyslexia prevents employment requiring reading and writing skills. (R. at 260). The 2002 report of a consultative examiner states "claimant retains the capacity to concentrate on, understand, and remember routine, repetitive tasks, and three and four step, uncomplicated instructions, but would have moderate problems with detailed, and marked problems with complex instructions." (R. at 241). This observation was reviewed and affirmed by state agency examiner in 2003. (Id.). In addition, in evaluating the severity of a claimant's pain or other symptoms, the ALJ, considers what treatment, other than medication, a claimant has received for relief of

20

the pain or symptom.  See 20 C.F.R. § 416.929(c)(v).  The ALJ's decision notes the lack of evidence in the Record indicating Plaintiff sought any treatment for his dyslexia. (R. 33).  From this evidence, the Court finds the ALJ's hypothetical questions accurately reflected the Plaintiff's impairments regarding his dyslexia.

Plaintiff further contends that his dyslexia would prevent him from performing all of the jobs cited by the vocational expert at the hearing because the Dictionary of Occupational Titles ("DOT") indicates all the jobs cited require language development and reasoning development levels that are beyond the RFC of the Plaintiff.  The ALJ found the when considering Plaintiff's age, education, past relevant work, medical impairments and RFC, Plaintiff would be capable of performing the jobs of cashier, assembler, machine operator, and insert machine and mold operator.  (R. at 37).  Each of these jobs requires a language development level at least 2 and a reasoning development level of 2 or 3, with the job of assembler requiring the lowest combined levels–learning development level of 1 and reasoning development level of 2.[6]

The DOT, defines a learning development level of 1 as follows:

Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

DOT, Appendix C, "General Educational Development." The DOT defines a reasoning development level of 1 as follows:

Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions.

_____

[6] As for the other job identified by the ALJ, the job cashier requires language development of 2 and reasoning development of 3; insert machine operator requires language development of 2 and reasoning development of 2; and mold machine operator requires language development of 2 and reasoning development of 3.

21

Deal with problems involving a few concrete variables in or from standardized situations.

Id.  As discussed above, the limited evidence in the record supports a finding that Plaintiff retains the capacity to perform these tasks at the levels described in the DOT.  This finding is further bolstered by the level of learning and reasoning development required for Plaintiff's past relevant work as a welder and carpet layer.  According to the DOT, the job of a welder requires a language development level of 3 and a reasoning development level of 4.[7] *See* DOT, combination welder # 819.384-010. Plaintiff worked as a welder from 1981 until 1995.  (R. at 143).  The Record does not contain substantial evidence demonstrating that Plaintiff's limitations resulting from his dyslexia have significantly deteriorated.  The vocational expert opined that there are approximately 10,000 assembler jobs available to an individual with Plaintiff's limitations.  (R. at 57).  The Court finds the ALJ's determination that Plaintiff retains the RFC, including the language and reasoning requirements, to perform the job of assembler is supported by evidence in the record as a whole, and finds Plaintiff's request for a remand for further development of the record unnecessary.

---

[7] A level 3 language development level requires the ability to (1) read a variety of novels, magazines, atlases, encyclopedias, safety rules, instructions in the use and maintenance of shop tools and equipment, and methods and procedures in mechanical drawing and layout work; (2) write reports and essays with proper format, punctuation, spelling, and grammar, using all parts of speech; and (3) speak before an audience with poise, voice control, and confidence, using correct English and well-modulated voice. DOT, Appendix C, "General Educational Development."  A reasoning development level of 4 requires the ability to apply principles of rational systems to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists, and interpret a variety of instructions furnished in written, oral, diagrammatic, or schedule form.  Id.

E.        **Prior Claims and the Administrative Record**

Finally, Plaintiff contends the ALJ and Plaintiff's counsel had prior claims files available to them at the time of the administrative hearing that have been removed from the administrative record presented to this Court for review. Plaintiff contends his request for review to this Court has been prejudiced by the removal of these prior claims files.

First, Plaintiff argues both the ALJ and Plaintiff's counsel relied on materials from the prior claims files at the hearing. The Court finds no evidence to support this claim. The transcript of the hearing shows the ALJ made reference to Plaintiff's prior claims files as part of an inquiry into whether the proceedings before the ALJ was a reapplication of the prior claims. (R. at 43). There is no indication whatsoever that the ALJ considered these files at any time prior to, during, or after the hearing. In fact, during the hearing the ALJ specifically states he has not read the decisions of the prior administrative judges regarding Plaintiff's prior claims. (R. at 47). Moreover, the notation in the hearing transcript states "Exhibits 1A through C15F, previously identified, were received into evidence and made part of the record thereof." (R. at 44). Exhibit C2-D contains a listing of the Plaintiff's disability claims and includes the names of the judges presiding over Plaintiff's prior claims. (R. 121-13). This Court finds it reasonable to conclude that the ALJ was referring to this document when he inquired as to the nature of the proceeding before him, and was not referring to documents contained in the prior claims files.

The Court also rejects Plaintiff's contention that Plaintiff's counsel relied on documents from the prior claims files in making his argument that Plaintiff's treating physician progressively favored disability over time. During the hearing, Plaintiff counsel referred the ALJ to exhibits 10F and C13-F, which are two medical opinions from plaintiff's physician, Dr. Holth. (R. at 48-49). While the ALJ had some initial

difficulty in locating C13-F, the transcript clearly indicates he eventually succeeded and that the document under consideration was a reported of Dr. Holth dated May 21, 2004. (R. at 49-50). The report at C13-F is part of the record before this Court. Indeed, the undersigned has referred to this document in the substance of the instant Report and Recommendation.

Moreover, the medical evidence contained in the record spans a time period that dates two years before Plaintiff's alleged onset of disability through approximately the middle of 2005, a year following the hearing before the ALJ. The Appeals Counsel considered this evidence and denied review. (R. at 10). The undersigned has discussed this same evidence in the instant Report and Recommendation, finding the ALJ's determinations regarding Plaintiff's RFC and ultimate non-disability determination to be supported by the evidence in the record as a whole. Accordingly, the Court finds no merit in Plaintiff's contention that he has been prevented from fully arguing his medical history before this Court because of an incomplete transcript presented by the Commissioner. The Court finds the transcript is full and accurate record of the proceedings relating to this case.

## III.    CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

(1)    Plaintiff's Motion for Summary Judgment (Doc. No. 12) be **DENIED.**

(2)    Defendant Commissioner's Motion for Summary Judgment (Doc. No. 20) be **GRANTED,** and this case be **DISMISSED WITH PREJUDICE.**

Dated: August 3, 2006.                              s/Jeanne J. Graham
                                                    JEANNE J. GRAHAM
                                                    United States Magistrate Judge

24

Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by August 23, 2006.  A party may respond to the objections within ten days after service thereof.  Any objections or responses filed under this rule shall not exceed 3,500 words. A District Judge shall make a de novo determination of those portions to which objection is made.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit.